UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BROOKSIDE HOMES OF AMERICA, INC.<br><br>　Plaintiff,<br><br>　　v.<br><br>HELEN'S HOUSE, LLC<br><br>　Defendant<br><br>and<br><br>GREG CALMES, RYAN CALMES, TONY HAWLEY, and JEREMY VERKUILEN,<br><br>　Defendants and Third-Party Plaintiffs<br><br>　　v.<br><br>CHRISTOPHER COLLAR,<br><br>　Third-Party Defendant. | Civil Action No. 14-69<br><br>ORDER DENYING MOTION TO DISMISS |

## I.　INTRODUCTION

Third-Party Defendant Christopher Collar ("Collar") moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the third-party complaint filed against him by Defendants and Third-Party Plaintiffs Greg Calmes, Ryan Calmes, Tony Hawley, and Jeremy Verkuilen (collectively "the Purchasers"). Dkt. No. 35. The Purchasers oppose the motion. Dkt. No. 43. Having reviewed the motion, the opposition, the reply thereto, the record of the case, and the relevant legal authority, the Court will deny the motion to dismiss.

1

## II. BACKGROUND

This lawsuit involves a dispute between Plaintiff, Brookside Homes of America, Inc. ("Brookside"), and Defendants, Helen's House, LLC ("Helen's House") and the Purchasers who own and operate Helen's House, a long-term adult care facility in Wisconsin. The Purchasers bought Helen's House from Collar in February 2016; the sale was memorialized in the Unit Purchase Agreement dated February 11, 2016 ("Purchase Agreement). At the time of the sale, Helen's House and Brookside had a non-exclusive license and service agreement whereby Brookside agreed to provide certain services to Helen's House in exchange for a fee (the "License Agreement"). Helen's House's obligations under the License Agreement were listed in the Purchase Agreement as one of the "Assumed Liabilities" for which the Purchasers agreed to assume responsibility.

After the sale, the Purchasers began operating Helen's House, including complying with the terms of License Agreement with Brookside. However, at some point, the Purchasers became disgruntled with the services (or lack of services) Brookside was providing to Helen's House and, in July 2016, they stopped paying the fees owed to Brookside under the terms of the License Agreement. They also attempted to unilaterally terminate the License Agreement.

Thereafter, Brookside instituted this action against the Purchasers and Helen's House, alleging that they breached the terms of the License Agreement. The Purchasers, in turn, filed a third-party complaint against Collar. In it, the Purchasers allege two counts: (1) a claim for indemnification pursuant to an indemnification clause in the Purchase Agreement, and (2) a claim for fraudulent inducement in which they allege that Collar made misrepresentation to them with the intent to induce them to enter into the Purchase Agreement. *See* Dkt. No. 18. Collar

moves to dismiss both counts pursuant to Federal Rule 12(b)(6), alleging that they fail to state a claim on which relief can be granted.

## III. STANDARD OF REVIEW

The moving party bears the burden on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. *Price v. Blyth Eastman Paine Webber, Inc.*, 576 F. Supp. 431, 432 (W.D. Pa. 1983). When considering a motion to dismiss under Rule 12(b)(6), the court "…must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Black v. Montgomery County*, 835 F.3d 358, 364 (3d Cir. 2016) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter[s], accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## IV. DISCUSSION

As indicated above, Collar moves to dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). He argues that neither Count I—the indemnification claim—nor Count II—the fraudulent inducement claim—state grounds on which relief can be granted. The Court will address each Count in turn.

### A. Count I—the Indemnification Claim

The Purchase Agreement between the Purchasers and Collar contains an indemnification clause that states, in relevant, part:

> 11.2 [Collar] and [Purchasers] (each an "<u>Indemnifying Party</u>") will reimburse, indemnify, and hold each other harmless…against and in respect of:

> (a) Any and all damages, losses, deficiencies, liabilities, costs and expenses incurred or suffered by any Indemnified Party that results from, relate to or arise out of:
>
> . . .
>
> (ii) As it may relate to the [Purchasers], any and all actions, suits, claims … against the [Purchasers] that relate to [Collar] or the Company in which the principal event giving rise thereto occurred prior to the Closing or which result from or arise out of any action or inaction prior to the Closing of [Collar], except for the Assumed Liabilities;
>
> . . .
>
> (iv) Any misrepresentation, breach of warranty or non-fulfillment of any agreement or covenant on the part of an Indemnifying Party under the Agreement, or from any misrepresentation in or omission from any certificate, schedule, statement, document or instrument furnished to an Indemnified Party pursuant hereto or in connection with the negotiation, execution or performance of this Agreement.

Dkt. No. 18, Ex. 1 at § 11.2.

The Purchasers allege that shortly before they agreed to assume the obligations under the Licensing Agreement between Brookside and Helen's House, Collar represented to them that "Brookside's services were essential and necessary to the continued operation of Helen's House." Dkt. No. 18 at ¶ 14. Purchasers further allege that this representation was false, and in fact, "Helen's House was receiving few to no services from Brookside." *Id*. ¶ 15. The Purchasers claim that had they "known that Helen's House was receiving few or no services from Brookside, and that Brookside's services were not essential and necessary to the operation of Helen's House, they would not have entered into the [Purchase Agreement]." *Id*. ¶ 18. In other words, the Purchasers argue, they would not have agreed to assume the obligations under the License Agreement, but for Collar's alleged misrepresentation about the necessity of Brookside's

4

services. Therefore, the Purchasers claim, any liability they have to Brookside for unilaterally terminating the License Agreement is the direct result of Collar's alleged misrepresentation and, as such, he is required to indemnify them for that liability pursuant to the indemnification clause in the Purchase Agreement.

Collar counters that the clear and unambiguous terms of the Purchase Agreement render the indemnification clause inapplicable to Brookside's claims against the Purchasers. First, he claims that the Purchasers' obligations to Brookside under the License Agreement are an "Assumed Liability" under the Purchase Agreement, and the Purchase Agreement specifically excludes Assumed Liabilities from the indemnification clause. Second, he argues that even if the obligations are not Assumed Liabilities within the meaning of the Purchase Agreement, the indemnification clause only applies to "claims…in which the principal event giving rise thereto occurred prior to the Closing[.]" He claims that the principal event giving rise to Brookside's claim against the Purchasers is their failure to pay Brookside and their attempt to unilaterally terminate the License Agreement, both of which occurred after the sale of Helen's House.

As stated earlier in this order, at this nascent stage of the litigation, this Court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under *any* reasonable reading of the complaint, the plaintiff may be entitled to relief." *Black*, 835, F.3d at 364 (emphasis added). Reviewing the third-party complaint and Purchase Agreement in light of this mandate, the Court concludes that Purchasers have stated a claim on which relief may be granted. The third-party complaint alleges that Collar: (1) made a misrepresentation (*i.e.*, the extent and necessity of Brookside's services), (2) the misrepresentation occurred before the sale of Helen's House closed, and (3) any liability to Brookside is the result of the alleged misrepresentation. These allegations fall squarely within

5

subsection (iv) of the indemnification clause and, if proven true, may give rise to liability on the part of Collar.

Moreover, the Court finds that the indemnification clause is ambiguous and therefore, the parties' intent is not discernable. For instance, on the one hand, the indemnification clause states that there is no indemnification for "Assumed Liabilities" of which the License Agreement is one, but on the other hand, it states that indemnification is available for "any misrepresentation" made by an Indemnified Party "in connection with the *negotiation*, execution or performance of [the Purchase Agreement]." Dkt. No. 18, Ex. at 11.2 (ii), (iv) (emphasis added). It is unclear how the indemnification clause applies in the event that it is alleged, as here, that the Purchasers agreed to assume a liability as a result of an alleged misrepresentation.

It is equally unclear whether the phrase "under the [Purchase] Agreement" contained in subsection (iv) modifies the terms "misrepresentation, breach of warranty or non-fulfillment of any agreement or covenant" or "Indemnifying Party." Subsection (iv) can be read either way and each reading results in a different interpretation.[1] Likewise, the term "statement" in subsection (iv) is ambiguous. Collar reads it to mean a written statement such as a financial document, while the Purchasers interpret it as an oral statement such as Collar's alleged misrepresentation. The Court agrees with Collar that if the word is read in context with subsection (iv) as a whole, it appears to mean a written financial statement. However, the term "Financial Statement" is defined in an earlier section of the Purchase Agreement (*see* section 5.3) and referred to as "Financial Statement" throughout that section, while subsection (iv) simply uses the word "statement." There is simply too much uncertainty in the indemnification clause for the Court to

---

[1] If the phrase modifies "misrepresentation" etc., then an argument can be made that the misrepresentation must be included in the Purchase Agreement in order to trigger indemnification under subsection (iv). On the other hand, if the phrase modifies "Indemnified Party," then it can be argued that it is simply referring to the indemnified parties under the Purchase Agreement, of which, Collar is one.

6

ascertain the intent of the parties. Given this ambiguity, the Court concludes that the Purchasers have alleged facts sufficient to state a claim on which relief could be granted.

### B. Count II—the Fraudulent Inducement Claim

The Purchase Agreement contains the following merger clause:

> 12.5 Entire Agreement and Modification. This Agreement supersedes all prior agreements, whether written or oral, between the parties with respect to its subject matter (including any letter of intent and any confidentiality agreement between Buyers and Sellers) and constitutes (along with exhibits and other documents delivered pursuant to this Agreement) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Agreement may not be amended, supplemented, or otherwise modified except by a written agreement executed by the party to be charged with the amendment.

Dkt. No. 18, Ex. 1 at § 12.5. Collar argues that because his alleged statements regarding the necessity of Brookside's services are not specifically enumerated in the Purchase Agreement and because the merger clause prohibits incorporating prior agreements into the terms of the Purchase Agreement, Purchasers cannot state a claim for fraudulent inducement based on his alleged misrepresentation.

Collar cites to two cases from Wisconsin[2] in which the courts held that the merger clauses in the contracts in question were specific enough to make it clear that the parties had not relied on pre-contract representations in entering the contract, and thus, allegations of fraud could not overcome the prohibition against introducing parol evidence. *See Bourne v. Quarles & Brady, LLP*, No. 2013AP211, 2013 WL 5354402, unpublished slip opinion (WI App. Sept. 26, 2013) and *Peterson v. Cornerstone Property Development, LLC*, 294 Wis. 2d 800 (WI App. 2006). These cases are easily distinguishable from the present case. First, both were decided on summary judgment, after the benefit of discovery, not on a motion to dismiss. Second, the merger clauses in those cases were much more specific than the one at hand. Indeed, the merger

---

[2] The Purchase Agreement is governed by Wisconsin state law. Dkt. No. 18, Ex. 1 § 12.11.

clause in *Peterson* specifically stated that the buyer plaintiff "has not relied on any representations made by the Seller in entering into the Condominium Offer to Purchase…" *Peterson*, 294 Wis. 2d at 820, see also, *Bourne*, 2013 WL 5354402, *5 (the parties to the agreement attested that they were not relying "upon any representation or statements made by any person"). The merger clause in the instant case contains so such representation. To the contrary, here, Collar *specifically represented that he did not make any false statements or omit any relevant information* in connection with the sale of Helen's House. *See* Dkt. No. 18, Ex. 1 at §5.16(a) ("No representation, warranty or other statement made by [Collar] in connection with the transaction contemplated by this [Purchase] Agreement contain any untrue statement of material fact or omits to state a material fact necessary in light of the circumstances in which it was made."). Therefore, the merger clause does not bar the Purchasers' fraud in the inducement claim.

Finally, Collar urges this Court to dismiss the fraudulent inducement claim because, in his view, it does not allege fraud with the requisite specificity required by Federal Rule of Civil Procedure 9(b). This Court disagrees. Under the facts of this case, the Court concludes that the third-party complaint alleges the fraud with sufficient particularity to satisfy the heightened pleading requirement of Federal Rule 9(b). *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (noting that the heightened pleading requirement of Federal Rule 9(b) "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case'"); *Spector v. Mondelez Internations, Inc.*, 178 F. Supp. 3d 657, 671 (N.D. Ill. 2016) (the precise level of particularity required by Rule 9(b) depends on the facts of the case).[3]

---

[3] The Purchasers allege that Collar did not comply with the conferral requirements set forth in this Court's Standing Order. *See* Dkt. No. 26. It recently came to the Court's attention that an error in the Standing Order may have caused

## V. CONCLUSION

Based on the foregoing reasons, the Court HEREBY DENIES Collar's motion to dismiss the third-party complaint.

Dated this 16th day of March, 2018.

*[signature]*
Barbara Jacobs Rothstein
U.S. District Court Judge

---

confusion regarding the conferral requirement. This error has been corrected (*see* dkt. no. 61) and the Court expects strict compliance with the terms of the Standing Order henceforth.