UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BROOKSIDE HOMES OF AMERICA, INC.**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**HELEN'S HOUSE, LLC**<br><br>    **Defendant**<br><br>and<br><br>**GREG CALMES, RYAN CALMES, TONY HAWLEY, and JEREMY VERKUILEN,**<br><br>    **Defendants and Third-Party Plaintiffs**<br><br>    v.<br><br>**CHRISTOPHER COLLAR,**<br><br>    **Third-Party Defendant.** | Civil Action No. 17-65<br><br>ORDER REGARDING SETTLEMENT AGREEMENT |

## I.   INTRODUCTION

Brookside Homes of America, Inc. ("Brookside") instituted this action against Helen's House, LLC ("Helen's House"), Greg Calmes, Ryan Calmes, Tony Hawley, and Jeremy Verkuilen (collectively, "Defendants") for breach of a Non-Exclusive License and Services Agreement between Brookside and Helen's House ("the License Agreement").[1] Thereafter, the

---

[1] Plaintiffs countersued Third-Party Defendant Christopher Collar. The claims against Third-Party Defendant Collar are not relevant to the current dispute and will not be discussed here.

1

parties reached a settlement that was memorialized in a document entitled Settlement Agreement Term Sheet. The parties contemplated executing additional settlement documents, including a final written settlement agreement and an amended license agreement between Brookside and Defendants. They successfully established the framework for the amended license agreement but stumbled on one provision in the amended agreement. Having reached an impasse, the parties request that the Court resolve the dispute for them. They agree to be bound by this Court's determination.[2]

## I. BACKGROUND

### A. The Brookside Home

Brookside developed a "proprietary model" for shared housing in which unrelated individuals live together in a dwelling that is staffed by a team of caregivers. Dkt. No. 90 at A-1. The proprietary model consists of intellectual property and services that are used to establish, implement, and operate the shared housing. *Id*. at 2. Brookside refers to the propriety model as a "Brookside Home" or "the Model" and offers non-exclusive licenses that allow a licensee to utilize Brookside's intellectual property and services to establish and operate Brookside Homes in a set territory. *Id*. In return for access to Brookside's intellectual property and services, the licensee must pay a one-time base fee and monthly residual fees for each Brookside Home it opens. *Id*. at 6.

### B. The Lawsuit

In 2013, Brookside and Helen's House (then owned by Third-Party Defendant Christopher Collar) entered into a License Agreement and Helen's House opened four shared

---

[2] A hearing on this matter is scheduled for March 29, 2019. However, having reviewed the parties' briefs, the Settlement Agreement Term Sheet, as well as the Licensing Agreement, the Court concludes that a hearing is not necessary and instead issues this decision.

housing facilities using the Brookside model. Helen's House paid Brookside the requisite base fee for each home and paid the monthly residual fees through June 2016. However, in February 2016, Defendants Greg Calmes, Ryan Calmes, Tony Hawley, and Jeremy Verkuilen acquired Helen's House and in July 2016, Helen's House stopped paying the monthly residual fees for the four homes it was operating. Brookside instituted this lawsuit in March 2017. Dkt. No. 1; Dkt. No. 54 at ¶¶ 11, 22, 28-29. Thereafter, Helen's House opened two more homes. To date, Helen's House has not paid residual fees for the two additional homes it opened during the pendency of this lawsuit. *Id.* at ¶ 43.

### C. The Settlement Agreement Term Sheet

As stated above, the parties reached a settlement in principle and set forth the parameters of their agreement in a document entitled "Settlement Agreement Term Sheet". Following the execution of the Settlement Agreement Term Sheet, the parties turned to drafting the final written settlement agreement, including an amended licensing agreement, as was contemplated in the Settlement Agreement Term Sheet. However, the parties have reached an impasse as to the interpretation of the residual fees provision in the Settlement Agreement Term Sheet and, therefore, have been unable to agree on how the residual fees should be treated in the amended licensing agreement. The portions of the Settlement Agreement Term Sheet that are relevant to this disagreement are as follows:

> NOW THEREFORE, in consideration of the mutual promises and releases in this Settlement Agreement Term Sheet, the Parties agree as follows:
> 
> . . .
> 
> 4. Starting in September 2018, Helen's House will begin paying Residual Fees (as that term is defined in the License Agreement), *on the six Model Homes they currently operate. … The $1,250 Residual Fee must be paid to Brookside for as long as each Model Home remains open.* …
> [.]

> 5. Helen's House and Brookside will amend the License Agreement consistent with the above Paragraph and also as follows: 1) Helen's House is permitted to open additional homes within its assigned territory and will not be responsible for paying any Base Fees or additional Residual Fees; 2) Helen's House may not open any Model Homes outside of its territory, absent further agreement between Helen's House and Brookside; 3) Brookside is no longer required to provide any services under the License Agreement. The remaining terms of the License Agreement will remain the same.

Dkt. No. 85-1 at 2-4 (emphasis added)

### D. The Parties' Competing Interpretations of the Residual Fees Provision in the Settlement Agreement Term Sheet

Helen's House interprets the italicized language in paragraph 4 above to mean that it must pay residual fees for the six homes it currently operates so long as the homes remain open in their original locations. In Helen's House's view, if it closes one of the six homes, it is no longer responsible for the residual fees for that home, even if Helen's House reopens the home in a different location. Therefore, Helen's House proposes the following language:

> From September 1, 2018 and thereafter, the Residual Fee for each Existing Home[3] Open in the Territory is reduced to $1,250 per month, … . There will be no Residual Fee for any Home other than the Existing Homes that have already been Opened in accordance with the Agreement in the Territory. [Helen's House] must pay Residual Fees, not to exceed $1,250 per month for each Existing Home for as long as such Home remains open.

Dkt. No. 85 at 3.

Brookside counters that the italicized language in paragraph 4 means that Helen's House must pay residual fees for the six homes regardless of whether one of the six original homes is closed and a new physical location is opened. In other words, Brookside claims that the residual fees are tied to the operation of a facility and not just the physical space where the operation

---

[3] The proposed amended Licensing Agreement defines "Existing Homes" the as "six Homes Open in the Territory."

takes place. Therefore, Brookside proposed the following language for the amended licensing agreement:

> From September 1, 2018 and thereafter, the Residual Fee for each Existing Home Open in the Territory is reduced to $1,250 per month … . [Helen's House]'s total Residual Fees will not exceed $6,000 per month and [Helen's House] is permitted to open additional Homes in the Territory without paying Residual Fees of more than $6,000 per month. [Helen's House] must pay Residual Fees, not to exceed $1,250 per month for each Home and $6,000 in total per month, for as long as any Home remains open.

Dkt. No. 86 at 2-3.

### III. DISCUSSION

The parties agree that Pennsylvania law governs this dispute. Under Pennsylvania law, "[s]ettlement agreements are to be interpreted according to principles of contract law, the foremost of which is to give effect to the parties' intent." *Constitution Bank v. Kalinowski*, 38 F. Supp. 2d 384, 385 (E.D. Pa. 1999). In ascertaining the intent of the parties, the plain language of the agreement controls. *Kalinowski*, 38 F. Supp. 2d at 385-86. As the Pennsylvania Supreme Court has directed:

> [w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where the language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended.

*Lesko v. Frankford Hospital-Bucks County*, 609 Pa. 115, 123 (Pa. 2011) quoting *Steuart v. McChesney*, 498 Pa. 45, 49 (Pa. 1982) (emphasis in original); *see also Creeks v. Creeks*, 619 A.2d 754, 756 (Pa. Super. 1993) (noting that a court may not modify the plain meaning of the words in a contract under the guise of interpretation). Therefore, it is this Court's task to

determine the parties' intent when they drafted the residual fees provision in the Settlement Agreement Term Sheet.

The Settlement Agreement Term Sheet does not define the terms "Model Home", "Residual Fees", nor "open", each of which is crucial to understanding the parties' intent. However, the Settlement Agreement Term Sheet incorporates the original License Agreement into the parties' settlement and the License Agreement does define these terms. *See* Settlement Agreement at 3, ¶ 4 ("Starting in September 2018, Helen's House will begin paying Residual Fees (as the term is defined in the License Agreement)…); ¶ 5 (the parties "will amend the License Agreement" to reflect their agreement regarding the residual fees, but the "remaining terms of the License Agreement will remain the same").

The License Agreement sets forth the following relevant definitions:

> "Home" means a shared housing home and services in the form of the Model and/or established and operated as a result of or arising out of the Intellectual Property or the Services hereunder by LICENSEE [.]
>
> "Model" means the shared housing home and services model sometimes referred to by LICENSOR as the "Brookside Home" or "cooperative family" model and generally described in Exhibit A attached hereto, and any such home or service arrangement that is the subject there of, or derived from, LICENSOR'S Intellectual Property.
>
> "Open" or "Opened" means when at least three residents initially, and physically, take up residency in the Home, as determined by LICENSOR in its reasonable judgment.
>
> "Closed" means a Home that LICENSEE has permanently ceased marketing for Residents and which in fact no longer has at least one Resident.

The Licensing Agreement further describes the residual fees as follows:

> Residual Fees. LICENSEE shall pay a residual fee to LICENSOR … per month for each Home that is Open ("Residual Fee"). The first payment of the Residual Fee shall be due on the final business day of the calendar month in which the Home was initially Opened, …. The Residual Fee will

> continue until the Home is Closed in accordance with the procedure described without LICENSOR'S consent, and for any Home Opened by a Principal, an Affiliate, or an Applicable Personnel.

Dkt. No. 90 at 2-3, 6-7.

Based on these definitions, the Court determines that the parties intended for Helen's House to pay residual fees on the six homes it was operating at the time they entered into the settlement agreement and that Helen's House only has to pay those fees for so long as the homes remain open in their current locations. The License Agreement defines "open" in terms of a requisite number of individual residents. Furthermore, the License Agreement states that a home is "closed" when it "no longer has at least one Resident." *Id*. at 2. If Helen's House were to stop operating one of the six homes, that home would no longer have a resident and would thereby meet the definition of "closed" under the License Agreement. And, as the License Agreement states, a licensee only has to pay the residual fee "until the Home is Closed[.]" *Id*. at 7.

## IV. CONCLUSION

For the foregoing reasons, the License Agreement shall be amended to include Helen's House's proposed language as set forth in section I.D. above.

Dated this 27th day of March, 2019.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

7